UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SARA G., | ) | |
| | ) | |
| Plaintiff, | ) | No. 20-cv-0686 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| KILILO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sara G.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment (dkt. 22) is GRANTED, Defendant's motion for summary judgment (dkt. 30) is DENIED, and the case is remanded for further proceedings consistent with this opinion.

**I.  Background**

Plaintiff filed for Title II disability insurance benefits on March 3, 2016, alleging a disability onset date of January 1, 2015. (Administrative Record ("R.") 15.) Plaintiff's application was denied initially and upon reconsideration. *Id*. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on April 19, 2018. *Id*. On February 22, 2019, ALJ James D. Wascher issued an unfavorable decision finding that Plaintiff was not disabled as defined in the Social Security Act. (R. 15-28.) The Appeals Council denied review of Plaintiff's claim on December 16, 2019. (R. 1.) Plaintiff filed the instant action on January 30, 2020 seeking review of

---

[1]  In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2]  Plaintiff filed a Memorandum in Support of Summary Remand (dkt. 22), which the Court construes as a motion for summary judgment.

the Commissioner's most recent decision. (Dkt. 1.)

The ALJ engaged in the five-step sequential evaluation process required by the Social Security Regulations. 20 C.F.R. § 416.920. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2015. (R. 17.) At Step Two, the ALJ found that Plaintiff had the severe impairments of major depressive disorder and anxiety disorder. *Id*. The ALJ also concluded that Plaintiff's breast cancer, hyperthyroidism, hypocholesterolemia, back pain, and degenerative knee changes were non-severe impairments. (R. 18.) At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 19.) Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following limitations: understand, remember, and carry out short, simple instructions; perform short, simple, routine, repetitive task, but no complex tasks, and in a work environment free of fast-paced production requirements; make simple work-related decisions with few, if any, workplace changes; require a routine work schedule with reasonable rest periods; can tolerate occasional interaction with coworkers and supervisors, but not joint or tandem tasks; can have no interaction with the general public. (R. 20.) At Step Four, the ALJ determined Plaintiff was incapable of performing her past relevant work. (R. 26.) At Step Five, the ALJ found that significant numbers of jobs existed in the national economy Plaintiff could perform, considering her age, education, work experience, and residual functional capacity. *Id*. Because of these determinations, the ALJ found Plaintiff not disabled under the Social Security Act. (R. 27.)

There are several points in the record where Plaintiff was diagnosed with insomnia. (R. 410, 467, 470, 471, and 472.) Plaintiff reported to her medical treaters and testified at her administrative hearing that she required a nap almost every day in the afternoon. (R. 53, 801.) On April 6, 2016,

Plaintiff's primary care physician, Dr. George Najat, diagnosed Plaintiff with insomnia and "advise[d] good sleeping hygiene." (R. 410.) The ALJ discounted Plaintiff's reported fatigue, noting that "[a]lthough claimant's hearing testimony and certain treatment notes from 2018 reflect that claimant naps for up to three hours most afternoons, her primary care physician…had previously questioned her sleep hygiene." (R. 23.) The ALJ continued "[i]n any event, there is no evidence that this behavior has persisted, or is likely to persist, for 12 months or more, or that it resulted from any mental or physical impairment." *Id*. Here, the ALJ failed to consider whether Plaintiff's insomnia was a medically determinable impairment and whether it was severe. As such, the ALJ committed error at Step Two of the five-step sequential process

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). A court's scope of review in these cases is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation and signals omitted). The Court reviews the ALJ's decision directly, but plays an "extremely limited" role in that the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute (its) own judgment for that of the Commissioner." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted).

**III.     Discussion**

The ALJ failed to properly consider Plaintiff's insomnia, and the Court must remand for further analysis of that condition. At Step Two of the sequential process, the ALJ determines whether the claimant has a "severe medically determinable physical or mental impairment" that has lasted or is expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.920(a)(4)(ii). To establish a medically determinable impairment, the claimant must show that the condition results "from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.921. Once a claimant has established a medically determinable impairment, the ALJ determines whether the impairment qualifies as severe. *Id.* The ALJ must consider all medically determinable impairments, including those found to be non-severe, in assessing residual functional capacity. 20 C.F.R. § 416.945(a)(2).

Here, the ALJ erred at Step Two of the sequential process by failing to determine whether Plaintiff's insomnia was a medically determinable impairment and whether it was severe. *See Paschal v. Berryhill*, 2018 WL 4095100, at *5 (N.D. Ill. Aug. 28, 2018). Insomnia has been considered a severe medically determinable condition by other courts in this circuit, and should have been analyzed by the ALJ as part of the opinion. *See, e.g.*, *Alaura v. Colvin*, 797 F.3d 503, 505 (7th Cir. 2015); *Arriaga v. Berryhill*, 2018 WL 1934068, at *3 (N.D. Ill. Apr. 24, 2018). There is evidence Plaintiff's treating doctors found she suffered from insomnia, as well as testimony that Plaintiff suffered from fatigue. However, the word insomnia does not appear anywhere in the ALJ's opinion and the Court does not believe the ALJ considered at any point whether Plaintiff's insomnia was medically determinable or severe. This is error and requires remand.

The Court recognizes that the ALJ considered Plaintiff's reported need for naps, but does not believe that cures the ALJ's error. First, Plaintiff's symptoms of napping and fatigue are distinct

4

from her condition of insomnia. While those symptoms may very well be related to Plaintiff's insomnia, the ALJ did not make that connection in the opinion; in fact, the ALJ found that Plaintiff's symptoms did not "result[] from any mental or physical impairment." (R. 23). That finding implies the ALJ did not consider Plaintiff's insomnia at a potential source of Plaintiff's fatigue, which shows that the ALJ's discussion of Plaintiff's napping was unrelated to Plaintiff' insomnia and did not cure his error in Step 2.[3]

Second, even if the Court believed that the ALJ's discussion of Plaintiff's fatigue constituted a consideration of Plaintiff's insomnia, the Court would remand due to factual errors in that section of the ALJ's opinion. For example, the ALJ incorrectly stated that Dr. Najat "questioned [Plaintiff's] sleep hygiene." (R. 23.) A review of the record shows that Dr. Najat "advise[d] good sleeping hygiene," but does not provide any indication that Dr. Najat believed that Plaintiff's insomnia was the result of poor sleep hygiene. Advising good sleep hygiene is an innocuous recommendation that a primary care doctor might make to a patient suffering from insomnia, and the ALJ's inference that Dr. Najat was questioning Plaintiff's sleep hygiene is not supported by the record. Additionally, if the Court were to accept that the ALJ's examination of Plaintiff's napping was tantamount to an analysis of her insomnia, the finding that it did not last for 12 months or more is factually incorrect. Findings of insomnia appear in notes separated by over two years. (R. 410 (insomnia noted in April 2016); R. 788 (impaired sleep due to "middle of the night wakenings" noted in August 2018).) These errors also support remand.[4]

## IV. Conclusion

Plaintiff's motion for summary judgment (dkt. 22) is GRANTED, and Defendant's motion

---

[3] To the extent the ALJ considered and rejected insomnia as a possible cause of the fatigue, that analysis is not articulated anywhere in the opinion and, therefore, the ALJ did not build a logical bridge between his conclusion that Plaintiff's fatigue was unrelated to her insomnia and the evidence in the record. This would also be a basis for remand.

[4] Because the Court remands on this basis, it does not reach the other issues raised in this appeal.

for summary judgment (dkt. 30) is DENIED, and the case is remanded for further proceedings consistent with this opinion.

**ENTERED:** 7/28/21

                                              Susan E. Cox,
                                              United States Magistrate Judge